IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **FERNANDO JUAREZ,** ) | |
| Petitioner, ) | |
| vs. ) | No. 3:16-CV-0843-G (BH) |
| ) | |
| **LORIE DAVIS,**[1] **Director,** ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I. BACKGROUND**

Fernando Juarez (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. He challenges his conviction for capital murder in Cause No. 34946CR in the 40th Judicial District Court of Ellis County, Texas. The respondent is Lorie Davis, Director of the Texas Department of Criminal Justice (TDCJ), Correctional Institutions Division (Respondent).

**A.    Trial**

After the State indicted Petitioner for capital murder on July 8, 2010, (*see* doc. 12-8 at 11),[2]

---

[1] Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

he pleaded not guilty and was tried before a jury, on May 16-27, 2011, with co-defendants Eric Maldonado and Ruben Hernandez.

The victim operated a store in Ennis, Texas. Petitioner, Eric Maldonado, and Isaiah Gonzalez planned to rob the victim with the help of Ruben Hernandez, a store employee. On April 18, 2010, Hernandez sent text messages to Petitioner informing him that the victim was leaving to take a deposit to the bank and how much money was in the deposit. Petitioner, Maldonado, and Gonzalez were waiting in a vehicle driven by Petitioner for the victim to leave; they planned to rob him on his way to the bank, but not near the store. The victim left the store. It appeared to Gonzalez that Petitioner and Maldonado were familiar with the victim's route and knew the bank where he was going to make the deposit, because they had been planning the robbery for a while. Maldonado was armed with a .380 caliber pistol, and Gonzalez was armed with a Cobray Model M–119 millimeter firearm ("Mac–11").

Petitioner pulled the vehicle in front of the victim to stop him. Maldonado and Gonzalez got out and approached the victim's minivan. Before they got out of the vehicle, Maldonado told Gonzalez to empty his clip if anyone saw them. Gonzalez pointed the Mac–11 at the victim. The victim was attempting to unbuckle his seat belt when Maldonado suddenly shot him. Gonzalez was in shock and did not unlock the passenger door of the van for Maldonado. Maldonado ran back to the vehicle driven by Petitioner and got in, and Petitioner drove away. Gonzalez got in the minivan and followed Petitioner. Shortly thereafter, Maldonado got out of Petitioner's vehicle and got in the minivan. They stopped at a business where Maldonado used to work. Gonzalez dragged the victim's body into the woods and left it, and the minivan was abandoned at a different location. Maldonado removed two envelopes with money from the minivan, Gonzalez took a third envelope

of money, and then Maldonado burned the minivan. The masks, rubber gloves, and the t-shirt Maldonado was wearing were thrown out of the window on the same road where the minivan was abandoned.

Maldonado gave Petitioner and Gonzalez some of the money. All three then used cocaine purchased by Maldonado after the offense. Maldonado and Petitioner went to a casino in Oklahoma shortly thereafter. The day after the victim's death, Petitioner, Maldonado, Gonzalez, and Maldonado's uncle went to purchase a new cell phone for Petitioner, because he had intentionally broken his after the robbery and murder. They then went to the uncle's apartment. The uncle's neighbor testified that Petitioner and Maldonado said that Maldonado had shot the victim. Petitioner said that it was a robbery gone bad, and that he did not intend for anyone to be shot, although the neighbor believed that Petitioner and Maldonado were bragging about it. Gonzalez was bragging about the incident as well. Petitioner and Maldonado indicated that the robbery was planned by an unnamed fourth person who worked at the store. Maldonado had approximately $4,000 and Gonzales had approximately $1,000. They were later apprehended in a vehicle that they borrowed from the uncle.

A search of Petitioner's bedroom in his parents' home led to the discovery of two boxes of nine millimeter ammunition, and two magazines that appeared to fit a Mac–11. A search of Maldonado's mother's home resulted in the discovery of the .380 caliber pistol later determined to be the weapon used to kill the victim, a Mac–11, and a shotgun. *See Juarez v. State*, No. 10–11–00213–CR, 2013 WL 3848385 at *2-4 (Tex. App. – Waco July 25, 2013).

Petitioner, who was seventeen years old at the time of the offense, was convicted of capital murder and sentenced to life imprisonment without the possibility of parole. (*See* docs. 12-9 at 55,

3

12-51 at 13.)

**B.     Post-trial Proceedings**

On appeal, Petitioner contended that because he was seventeen years old at the time of the offense, the life sentence without the possibility of parole was unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012) (holding that a sentence of mandatory life imprisonment without the possibility of life without parole for a person under eighteen years old at the time of the crime is unconstitutional).  The Court of Appeals held that the issue was not preserved for appellate review and affirmed the judgment.  *Juarez v. State*, 2013 WL 3848385 at *8-9.  The Texas Court of Criminal Appeals held that the Court of Appeals erred and remanded the case to that court.  *Juarez v. State*, No. PD-1049-13, 2014 WL 4639776 (Tex. Crim. App. July 23, 2014).  On remand, the Court of Appeals reformed the sentence to life imprisonment with the possibility of parole.  *Juarez v. State*, No. 10–11–00213–CR, 2014 WL 5093977 (Tex. App. – Waco, Oct. 9, 2014).  Petitioner's subsequent petition for discretionary review was refused on February 4, 2015.  *Juarez v. State*, No. PD-1393-14 (Tex. Crim. App. Feb. 4, 2015.)

Petitioner's state habeas application was filed on January 22, 2016.  (*See* doc. 12-70 at 45.)  On March 23, 2016, it was denied without written order.  (Doc. 12-66); *see Ex parte Juarez*, WR-84,689-01 (Tex. Crim. App. Mar. 23, 2016).

**C.     Substantive Claims**

Petitioner's federal habeas petition, filed by counsel on March 25, 2016, challenges his sentence on the following grounds:

> (1) Under *Miller v. Alabama*, Petitioner's sentence of life imprisonment with the possibility of parole after 40 years violates the Eighth Amendment, because Petitioner never intended to kill the deceased;

4

>   (2) Petitioner's sentence of life with the possibility of parole after 40 years violates the Ex Post Facto Clause of U.S. Constitution Article I, section 10;
>
>   (3) Petitioner's sentence of capital life with parole possibility after 40 years violates the Eighth Amendment and *Miller v. Alabama* because it is a *de facto* life sentence.

(*See* docs. 1 at 6-8, 6 at 13, 21, 28.)  Respondent filed a response on July 21, 2016.  (Doc. 10.)  Petitioner filed a reply on August 20, 2016.  (Doc. 11.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

>   with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established

5

federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. EX POST FACTO

Petitioner contends that under his reformed sentence, he will not be eligible for parole for 40 years, andthat the application of the statute authorizing a sentence of life with parole after 40

years was a violation of the Ex Post Facto Clause because the statute was enacted after he committed the offense.

Under the Ex Post Facto Clause, "[t]he Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." *Dobbert v. Florida*, 432 U.S. 282, 299 (1977). "To fall within the ex post facto prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997).

Petitioner was originally sentenced to life without parole under the version of Texas Penal Code § 12.31(a)(2) in effect in 2010, when he committed the offense. Section 12.31(a) provided:

> An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall by punished by imprisonment in the Texas Department of Criminal Justice for:
>
> > (1) life, if the individual's cases was transferred to the court under Section 54.02, Family Code; or
> >
> > (2) life without parole.

*See* Act of June 19, 2009, 81st Leg., R.S., ch. 765, § 1, 2009 Tex. Gen. Laws 1930. Subsequently, in 2012, the Supreme Court held that a mandatory life sentence without parole for a juvenile (a person under 18 years old) violates the Eighth Amendment. *See Miller v. Alabama*, 567 U.S. at 465, 470. Section 12.31(a) was then amended to provide:

> An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall by punished by imprisonment in the Texas Department of Criminal Justice for:
>
> > (1) life, if the individual committed the offense when younger than 18 years

7

> of age; or
>
> (2) life without parole, if the individual committed the offense when 18 years of age or older.

*See* Act of July 22, 2013, 83rd Leg., 2nd C.S., ch. 2, § 1, 2013 Tex. Gen. Laws 5020. That amendment took effect immediately, and it applied to "a criminal action pending, on appeal, or commenced on or after the effective date of this Act [July 22, 2013], regardless of whether the criminal action is based on an offense committed before, on, or after that date." *See id.*, §§ 3, 4, 2013 Tex. Gen. Laws at 5021.

The parole statute in effect when the offense was committed and when Petitioner's sentence was reformed, Texas Government Code § 508.145(b), provided:

> An inmate serving a life sentence under Section 12.31(a)(1), Penal Code, for a capital felony is not eligible for release on parole until the actual calendar time the inmate has served, without consideration of good conduct time, equals 40 calendar years.

As a result, a juvenile who receives a mandatory life sentence for capital murder is eligible for parole after serving 40 years.

Under *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." The Supreme Court cited Wyo. Stat. Ann. § 6–10–301(c) (2013), which is similar to the 2013 version of § 12.31(a) in operation with § 508.145(b), was amended in 2013 to eliminate life sentences without parole for juveniles and to provide that juveniles who receive life sentences would be eligible for parole after 25 years. Although the Supreme Court did not consider whether application of the statute was an ex post facto violation, its opinion suggests that a state court's application of such a retroactive statute as a remedy for a *Miller* violation would not be

8

contrary to clearly established federal law.

Petitioner's original sentence of life imprisonment without parole was reformed to life imprisonment, and he is eligible for parole after serving 40 years of his sentence. The reformed sentence did not increase the punishment for the crime, so there was no ex post facto violation by the application of the 2013 version of § 12.31(a) in conjunction with § 508.145(b). *See Skipper v. Cain*, 2017 WL 6884335 at *4 (M.D. La. Nov. 6, 2017), *rec. adopted*, 2018 WL 343851 (M.D. La. Jan. 9, 2018) (reformation of a juvenile's unconstitutional life sentence without parole to a life sentence, with a parole eligibility date to be determined under a statute that was not in effect when the offense was committed, was not an ex post facto violation, because the reformed life sentence with parole eligibility was more favorable than the original life sentence without parole).

Petitioner has not shown that there was an ex post facto violation and that the state court's rejection of this claim was contrary to clearly established federal law.

### IV. *DE FACTO* LIFE SENTENCE WITHOUT PAROLE

Petitioner contends that a life sentence with parole eligibility after 40 years is a *de facto* life sentence that violates the Eighth Amendment and *Miller v. Alabama* because it is unlikely that he will be released on parole after he serves 40 years of his sentence. He points out that the parole board considers static and dynamic factors in deciding whether to grant parole, but a prisoner's age at the time of the offense is not among those factors.

In *Graham v. Florida*, 560 U.S. 48 (2010), the Supreme Court held that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him ... with some realistic opportunity to obtain release before the

9

end of that term." *Id*. at 82. Although a "State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime, ... [the State must] give [a juvenile offender] some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id*. at 75. The Court recognized that "[t]hose who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives." *Id*. "The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society." *Id*.

In *Virginia v. LeBlanc*, 137 S.Ct. 1726 (2017), the habeas petitioner contended that his life sentence for a nonhomicide crime violated *Graham*. Virginia did not have parole for felonies, but it provided for geriatric release that allowed prisoners who are sixty years old and who have served at least ten years of a sentence to petition for conditional release. *Id*. at 1727-28. The parole board considers the prisoner's individual history, conduct during incarceration, and changes in attitude toward himself and others. *Id*. at 1729. The state court held that because the geriatric release program used standard parole factors, it satisfied the *Graham* requirement that a juvenile convicted of a nonhomicide crime have a meaningful opportunity to receive parole. *Id*. The Supreme Court stated that *Graham* did not decide whether a life sentence for a juvenile with the possibility of a geriatric release violates the Eighth Amendment. *Id*. at 1728-29. For that reason, the state court's rejection of the claim was not objectively unreasonable. *Id*. at 1729.

Similarly, the Supreme Court did not decide in *Miller* that a life sentence for a juvenile with eligibility for parole after serving 40 years is unconstitutional. Because there is no clearly established law holding that such a sentence is a *de facto* life sentence without parole and is

10

unconstitutional, Petitioner has not shown that the state court's rejection of this claim was unreasonable.

### V. INTENT TO KILL

Petitioner contends that the life sentence with eligibility for parole in 40 years is unconstitutional under *Graham* because it is a *de facto* life sentence without parole, and he did not have the intent to kill. He asserts that the Court recognized in *Graham*, 560 U.S. at 69, that a defendant who does not kill, intend to kill, or foresee that life will be taken is categorically less-deserving of the most serious forms of punishment than are actual murderers. Under a concurring opinion in *Miller*, 567 U.S. at 489-90 (Breyer, J., concurring), he did not kill or intend to kill, so his crime was not a homicide.

First, as discussed above, Petitioner has not shown that his sentence is a *de facto* life sentence without parole under clearly established federal law. Second, the concurring opinion in *Miller* is not clearly established law. He has not shown that clearly established law prohibits a life sentence for a juvenile who is guilty of capital murder as a party or as a co-conspirator.

Under Texas law, a person commits capital murder if he intentionally causes the death of an individual while in the course of committing or attempting to commit robbery. Tex. Penal Code § 19.03(a)(2); *see Juarez*, 2013 WL 3848385 at *4. A person is guilty as a party if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code § 7.02(a)(2); *see Juarez*, 2013 WL 3848385 at *4. A person can also be guilty as a co-conspirator. "If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the

11

offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." Tex. Penal Code § 7.02(b); *see Juarez*, 2013 WL 3848385 at *5.

The Court of Appeals held that the evidence was insufficient to support the conviction based on the following:

> Maldonado and Gonzalez were both armed with loaded weapons as they exited the vehicle [Petitioner] was driving and approached [the victim]. Maldonado had told Gonzalez to shoot if necessary. ... [T]he extra magazines and ammunition that were the same type as the Mac–11 that Gonzalez pointed at [the victim were] later found in [Petitioner's] closet. After the shooting, [Petitioner] stayed with Maldonado and Gonzalez and drove with them as they dumped [the victim's] body in the woods, destroyed the van, and disposed of other physical evidence. ... It was not unreasonable for the jury to infer that [Petitioner] knew that Maldonado and Gonzalez were armed when they approached the van. It was also not unreasonable for the jury to have determined that murder should have been anticipated.

*Id*. The state court reasonably determined that there was sufficient evidence that Petitioner was guilty as a party or co-conspirator.

Petitioner has not shown that the state court unreasonably rejected this *Graham/Miller* claim.

## VI.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary. Petitioner has not shown he is entitled to an evidentiary hearing.

## VII.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 28th day of March, 2018.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE